## Richmond.

### WALLER'S ADM'R v. CATLETT'S EX'ORS AND ALS.

MAY 12th, 1887.

WILLS—*Bequest to mother and children—Construction.*—Money was bequeathed for separate use of a wife and her children. It was invested in October, 1862, in a Confederate bond by the trustee, which perished on his hands. During mother's lifetime one of her sons brought suit for himself and sister against trustee to recover the trust fund.

HELD :

2. The children were not entitled to demand any portion of the trust fund during their mother's life. *Bain* v. *Buff*, 76 Va. 374.

2. The trustee, acting in good faith and with the lights of that time, was not liable as for a breach of trust. *Douglas* v. *Stephenson*, 75 Va. 749.

Appeal from decree of circuit court of Gloucester county, pronounced in vacation, August 18th, 1885, in the cause of John B. Waller, in his own right, and as administrator of Agnes T. Waller, deceased, plaintiff, against John W. C. Catlett's executors and others. The decree being unfavorable to plaintiff, he appealed to this court. Opinion states the case.

*John Critcher, Jr.,* for the appellant.

*F. G. Jackson,* and *Mayrus Jones,* for the appellees.

LACY, J., delivered the opinion of the court.

William S. Thurston, late of the county of Mathews, by his will, which was probated on the eleventh day of March,

1861, bequeathed to J. W. C. Catlett, as trustee, the sum of $1,000 to be held by him in trust for the sole and separate use and benefit of his niece Nannie Waller, the wife of C. C. P. Waller, and her children, so that the same shall not be in any way liable for any debt, contract, or engagement of her said husband. In 1862, on the eighth of March, the said Catlett collected this sum of Thurston's executor, as trustee, in the then currency of the country, known as Confederate money, and in October following invested the same in a Confederate bond for the same amount, in his name, as trustee. The war, then raging in the country, ended in 1865, and, as one of its results, this Confederate bond became worthless. Catlett, the trustee, was the father of Mrs. Waller, and lived until 1883, when he died, having made his will, in which, after disposing of his property among his children and his wife, he says: "I received during the war one thousand dollars in Confederate money as trustee for Mrs. Waller and her children under the will of Dr. Thurston, and invested it in a Confederate bond, which is now good for nothing. I am sure my daughter will never contend in any way for this money; but should there be any difficulty about it, and my estate suffers, her portion must make good the loss, or she must account in the division for one thousand dollars which I advanced to her husband in his life-time, but I wish it understood that I do not intend for her to account for any advancement made to her, either of money or negroes, unless my estate is made to account for the sum invested in Confederate bonds, which investment I had a right to make under the laws of Virginia." Catlett, trustee, died July 11, 1883. Up to that time, nor since that time, did Mrs. Waller institute any proceedings against her said father, nor against his estate after his death, but on the fourteenth day of April, 1884, sold her portion of her father's estate to Charles Catlett, one of her brothers. A

short time afterwards, (the date cannot be stated from the record,) the appellant, who is the son of Mrs. Waller, filed his bill in his own right, and as the administrator of his sister, Agnes Waller, who had died. At October rules, 1884, following, the defendants filed their demurrer, which being overruled at the following term, they answered, and, decree being rendered for the defendants, the plaintiff, John B. Waller, appealed.

The first question to be considered in the case is one which arises both on the demurrer and the answer. Can the plaintiffs herein maintain this action? Does the right to use or take the benefit of the fund in question, or any part thereof, belong to John B. Waller in his own right, or as administrator of his sister, Agnes F. Waller, deceased, or does it rest with his mother alone? The fund arose by the provisions of the tenth clause of Thurston's will, by which it was left to the trustee, " to be held by him in trust for the sole and separate use and benefit of my niece, Nannie Waller, the wife of Charles C. P. Waller, and her children, so that the same shall not be in any way liable for any debt, contract, or engagement of her said husband.

This was a devise to the trustee for the use and benefit of the mother, and no estate passes to the children during her life. The obvious intention was to provide for her, and through her for her children. The bequest is for the sole and separate use and benefit of her and her children. As in *Wallace* v. *Dold,* 3 Leigh, 258, the daughter was the chief object of the testator's bounty, so in this, the niece, the mother of the children, is the chief object of the bounty here bestowed. It cannot have been intended that the children should be entitled to demand anything of the trustee or the mother during her life; and as in *Leake* v. *Benson,* 29 Gratt. 155, " it was the intention of the grantor to give to his wife the trust property for her life, relying upon her discretion and affection for the children so to dis-

pose of the income as would most conduce to the support and comfort of the families." So, in this case, the mother is intrusted with the management and control of the income of this for such objects and purposes. "And we conclude," added this court in *Wallace* v. *Dold,* "that the suit cannot be maintained by the appellants as plaintiffs, and their bill was properly dismissed, with costs, for that reason. · See, also, *Stinson* v. *Day,* 1 Rob. (Va.) 442; *Bain* v. *Buff,* 76 Va. 374.

But we think, moreover, the circuit court of Gloucester was plainly right in dismissing the bill for the reasons given by that court,—that, under the circumstance of this case, the trustee was guilty of no breach of trust in receiving the Confederate money, and that the said trustee, acting with the lights before him at that time, and in perfect good faith, was justifiable in making the investment in a Confederate bond. See *Douglass* v. *Stephenson,* 75 Va. 749, and cases cited.

Upon the whole case, in every aspect of it, we think the circuit court of Gloucester was plainly right in dismissing the bill of the plaintiff, and the decree of the said circuit court appealed from is affirmed.

DECREE AFFIRMED.