# Wytheville.

## HORACE WARD v. HILLIARD BAYLOR, ET ALS.

June 12, 1930.

Absent, Holt and Epes, JJ.

The opinion states the case.

*R. O. Norris, Jr.*, and *Raymond Sisson*, for the appellant.

*A. N. Wellford*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

On December 1, 1926, appellant filed his bill of complaint seeking a construction by the court of two certain deeds of conveyance from Joseph Blair to Bettie Ann Blair and others, and also praying for a partition of the lands conveyed. Appellees were made parties defendant and filed their answer denying the right of appellant to have a partition of the land as contended for in the bill of complaint. The cause was heard by the chancellor upon the bill and answer and the following agreed statement of facts:

"Joseph Blair was an old illiterate negro, being totally unable to read and write. On July 5, 1905, he owned seven (7) acres of land more or less; this was all the land he then, or at any time, owned. Five of these seven acres the said Joseph Blair had purchased April 22, 1874, from Travis Glasgow and his wife, and on this five acres were all the buildings. Approximately two acres he had purchased June 6, 1879, from F. A. Shackleford and on this tract were no buildings. The lot purchased from Glasgow was a long narrow lot less than thirty yards wide, while the lot purchased from Shackleford was more nearly a square shaped lot, and though adjoining the Glasgow lot, only extended a short distance along the western boundary of the Glasgow lot. Both the lot purchased from Glasgow and wife and the lot purchased from Shackleford were bounded on the north by the public road from Warsaw to Tappahannock ferry, said public road being commonly called the front of said lots. The boundaries of said two lots were, on July 5, 1905, as well as on August 10, 1906 (as indeed they still are), as follows: The lot bought of Glasgow and wife was bounded on the north by the public road from Warsaw to Tappahannock ferry, on the east by the land of Travis Glasgow, on the south by the lands of R. Carter Wellford and on the west by the lot bought of Shackleford, the lands of George Saunders, Thomas Dates and Moore Baylor; the lot bought from Shackleford was bounded on the north by said public road, on the east by the said lot bought from Glasgow and wife, on the south by the lot of George Saunders, and on the west by the lands of R. Carter Wellford (the private road to Sabine Hall). A diagram of said lots is hereto attached. Letters A, B, C, D represent lot bought from Glasgow and wife; letters D, E, F, G, the

lot bought from Shackleford. Joseph Blair occupied, used and treated the lot bought from Shackleford as one tract of land; all of the front of both of these lots represented by the letters A, H, F, G was fenced off and cultivated as one lot or field. There was another fence (dotted line O, N across the lot bought from Glasgow); this fence and fence H, E were the south and north fences respectively of his yard and curtilage where his dwelling and other buildings were, and south of the fence O, N, was the remainder of the lot bought from Glasgow and wife, which was in woods. Between fences H, E, and O, N, were located the dwellings and outbuildings of said Blair, and the letters H, O, N and E, represent his yard and curtilage. As will be seen from the above, Joseph Blair had seven acres of land subdivided into three lots, (1st) the lot on the public road; (2nd) the lot (in the rear and south of the lot on the public road) on which stood his dwelling and other buildings; (3rd) and south of the dwelling lot a wood lot.

"In August, 1926, complainant employed A. L. Garland, a surveyor, to mark off his land, and this surveyor, after examining and comparing the deed of July 5, 1905 and August 10, 1906 (Plaintiff's Exhibits C and D), surveyed and marked off three acres of land as complainant's part, the stakes of which survey now stand, giving complainant nearly all of the land on the public road, and leaving only a wide lane paralleling the line A, H, and leading from the said public road to the land claimed by the respondents in this suit, the land so surveyed being represented on the diagram by the letters X, Y, F, G. Joseph Sydnor and Joseph Sydnor Blair were one and the same person. The deed of

September 10, 1926, from the heirs of Joseph Sydnor to complainant was for only a nominal consideration."

Attached to the above agreement and made a part thereof is this diagram:

After a personal inspection of the land, the chancellor held that it was impossible to partition the same in accordance with the directions and descriptions contained in the two deeds from Joseph Blair and carry out the manifest intention of the grantor in disposing of the property, and further held that the true rule to be applied in the construction of the conveyances in issue was to look to the facts and circumstances, and adopt that conclusion which in the light of such facts and circumstances would most effectually carry out the intention of the parties. *State Savings Bank* v.

*Stewart*, 93 Va. 447, 25 S. E. 543. Thereupon, a decree was entered as follows:

"On consideration whereof, the court being of the opinion, after viewing the land in controversy, that it is impossible to divide the said land in accordance with the directions and descriptions in the deed of July 5, 1905, from the late Joseph Blair to Bettie Ann Blair, Willie Jackson, and Joseph Sydnor Blair (said deed being of record in the clerk's office of this court in Deed Book No. 39, page 456, and a certain copy of which is filed with complainant's bill as Exhibit C), if the land conveyed and embraced in said deed of July 5, 1905, is limited to the land conveyed to Joseph Blair, the grantor in said deed, by Travis Glasgow and wife, by deed dated April 22, 1874, and of record in said clerk's office in Deed Book No. 31, page 486 (Complainant's Exhibit A), the court is of the opinion that the general description in the aforesaid deed of July 5, 1905, to-wit, the reference therein to the said deed of April 22, 1874, from Travis Glasgow and wife to said Joseph Blair, must therefore give way to the particular description of the land embraced and conveyed in said deed of July 5, 1905, and doth so decide, adjudge, order and decree.

"And the court being further of the opinion that the said Joseph Blair, now deceased, who was an old illiterate negro, intended to dispose of, and did describe, dispose of and convey in said deed of July 5, 1905, not only the land conveyed to him in said deed of April 2, 1874, from Travis Glasgow and wife, but also the land conveyed to him in deed of June 5, 1879, from F. A. Shackleford, of record in the clerk's office of this court in Deed Book No. 32, page 423

(Complainant's Exhibit B), making the aggregate amount seven acres, doth so decide, adjudge, order and decree.

"And the court being further of the opinion that the land described in the deed of August 10, 1906, from said Joseph Blair to Joseph Sydnor (who is one and the same person as Joseph Sydnor Blair), of record in said clerk's office in Deed Book No. 40, pages 203-4 (Complainant's Exhibit D), is a part of the land previously described and conveyed to said Joseph Sydnor Blair in said deed of July 5, 1905, from said Joseph Blair to Bettie Ann Blair, Willie Jackson and Joseph Sydnor Blair, doth so decide, adjudge, order and decree.

"And the court doth further adjudge, order, and decree that the said seven acres of land, more or less, conveyed as aforesaid to said Joseph Blair by Travis Glasgow and wife, and by F. A. Shackleford, be treated as a whole, and divided as directed in said deed of July 5, 1905, as follows, to-wit: That the said Horace Ward (the successor in title to the said Joseph Sydnor Blair) take three acres of said land, which three acres shall include the land conveyed to said Joseph Blair by F. A. Shackleford, and in addition a part of the land conveyed to said Blair by Travis Glasgow and wife, and shall begin at a stake on the public road from Warsaw to Tappahannock ferry and run in a straight line, in a southerly direction, to another stake in the lot in the rear, by the lot in the rear is meant the lot, yard, or curtilage on which stands the dwelling of the late Joseph Blair, where Bettie Ann Blair now resides, and which at the time of the execution of the deed of July 5, 1905, was divided by fences from the remainder of Joseph Blair's land;

thence in a westerly direction in a straight line (which straight line is fixed by the northern line extended of the George Saunders land) to the land of George Saunders; thence continuing on in a straight line, with the land of the said George Saunders, to the land of the late R. Carter Wellford (the road to Sabine Hall); thence with the land of the said R. Carter Wellford, in a northerly direction, to said public road; thence with said public road, in an easterly direction with said public road, to the point of beginning (said three acres having been so laid off by Andrew L. Garland, surveyor, in August, 1926); and that the said Hilliard Baylor (the successor in title to the said Willie Jackson) take subject to the life interest therein of Bettie Ann Blair, the remainder of the said land, about four acres, which is the residue of the land conveyed by Travis Glasgow and wife to said Joseph Blair as aforesaid, and which includes the dwelling house of the said Joseph Blair, yard and curtilage, and the land lying south of the same, and a narrow strip of land leading from same to said public road, and which narrow strip of land lies between the three acres allotted herein to said Horace Ward and the land of the heirs of Travis Glasgow."

From that decree this appeal was allowed.

In *Perkins' Trustee* v. *Dickinson*, 3 Gratt. (44 Va.), 335, it is held that in construing a deed the court will so construe it as to effectuate the leading intent of the parties.

In *Lindsey* v. *Eckels*, 99 Va., 668, 40 S. E. 23, 24, it is said: "Whether construing a deed or a will, the object is to discover *the intention*, which is to be gathered in every case from the general purpose and scope of the instrument, in the light of the surrounding circumstances."

While the inconsistent descriptions in the deeds are difficult to reconcile, it does plainly appear, from the agreed statement of facts and the diagram filed, that to sustain the contention of appellant would utterly destroy the value of the property for all practical purposes. It would give all the buildings to appellant, leave the widow, Bettie Ann Blair, without a home and with only a small strip of woodland. The land would be partitioned into two narrow strips, one approximately ten yards wide by eight hundred and forty-four yards long, and the other about twenty yards wide and eight hundred and forty-four yards long. It would also result in giving to appellant not only the two acres and twenty poles in the alleged purchase from Shackleford, but three acres of the five acres conveyed by Glasgow and wife.

When the deeds are viewed in the light of the surrounding facts and circumstances, having special reference to the intention of the grantor, Joseph Blair, to provide a home for his wife, and in recognition of the assistance afforded by Willie Jackson, we are forced to the conclusion that it was the intention of the grantor to dispose of all the lands owned by him at the time of the execution of the deed dated July 5, 1905. This conclusion was reached by the learned chancellor who had the benefit of the survey made by the surveyor employed by appellant, and in addition thereto, made a personal inspection of the property. While it may be true that where a chancery cause is heard upon depositions there is no such presumption that the decree is correct, as arises when a judgment at law is rendered by the court trying the action, yet when it appears that the chancellor has had the benefit of such extrinsic evidence as was had in this cause, the conclusion

reached, based in part upon a view of the premises, will be accorded proper consideration, and in a doubtful case the decree should be upheld.

In our opinion the decree of the lower court fully meets the ends of justice, and it will be affirmed.

*Affirmed.*